IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARLENE MARIE GAY-ALLEN,
     Plaintiff,

vs.                              Case No.: 3:13cv586/MCR/EMT

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

     This action was referred to the undersigned—pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Act—for all proceedings, including issuing preliminary orders, conducting necessary hearings, and filing a report and recommendation containing proposed findings of fact and conclusions of law and recommending disposition of the complaint.

I.     BACKGROUND

     Plaintiff Darlene Marie Gay-Allen, proceeding pro se, initiated this action on November 14, 2013, by filing a complaint for judicial review of a final decision of Defendant Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34, and for supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–83 (*see, e.g.*, doc. 1).  Plaintiff subsequently filed amended complaints (docs. 4, 7, 10).  On February 28, 2014, Attorney Howard D. Olinsky filed a Notice of Appearance of Counsel and a Fourth Amended Complaint on Plaintiff's behalf (docs. 13, 15).  Leave to proceed in forma pauperis was granted after Attorney Olinsky's appearance (*see* doc. 16).

     Now before the court is the Commissioner's Amended Motion to Dismiss and exhibits in support thereof (doc. 23 & Attachs.).  Plaintiff, through her counsel, responded in opposition to the motion (doc. 25 & Attachs.) and, at the court's direction, the Commissioner filed a reply (doc. 29).

Upon review of the parties' submissions, the court concluded that Defendant's motion should be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56, as both parties submitted affidavits and other exhibits in support of their respective positions, and the court intended to consider some or all of the parties' exhibits in resolving the motion to dismiss.  *See, e.g.*, Flores v. Sullivan, 945 F.2d 109, 110 n.3 (5th Cir. 1991) ("While the Secretary filed a Motion to Dismiss (presumably under Federal Rule of Civil Procedure 12(b)(6)), the district court properly converted the motion for dismissal into a Rule 56 motion for summary judgment since the court considered material outside the pleadings, namely the affidavits.") (citations omitted). The court then advised the parties of its intention to treat the Commissioner's motion as one for summary judgment, set an advisement date of December 15, 2014, and provided the parties an opportunity to submit additional evidentiary materials prior to the advisement date (*see* doc. 30).  Neither party submitted additional materials.  For the reasons set forth below, the undersigned recommends that the Commissioner's motion to dismiss—treated as one for summary judgment—be granted.

II.    MATERIAL FACTS

On April 5, 2013, an administrative law judge ("ALJ") issued a written decision denying Plaintiff's claims for DIB and SSI (doc. 23-1 at 5–19).[1]  Thereafter, Plaintiff requested review of the ALJ's unfavorable decision, but the Appeals Council ("AC") denied Plaintiff's request for review (*id*. at 20–24).[2]  The AC's notice informing Plaintiff of its decision to deny review (hereafter "the Notice" or "the AC's Notice"), dated September 4, 2013, advises Plaintiff of her right to commence a civil action within sixty (60) days from the date of receipt of the Notice, and that the AC would presume Plaintiff received a copy of the Notice within five days of its date (*id*.).  The court has determined, and the parties agree, that because five days from the date of the Notice was September 9, 2013, Plaintiff was required to commence a civil action in this court on or before November 8, 2013 (Monday, September 9, 2013 + 60 days = Friday, November 8, 2013).  As noted *supra*, Plaintiff did not commence the instant action until Thursday, November 14, 2013.

The Commissioner contends this action must be dismissed because it was untimely filed. In support of her contention, the Commissioner relies in part on the following exhibits:  (1) the

---

[1]   The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned or any other page numbers that may appear.

[2]   In light of the AC's denial of review, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

ALJ's decision of April 5, 2013; (2) the AC's Notice of September 4, 2013; and (3) a declaration of Patrick J. Herbst, of the Court Case Preparation and Review Branch 3 of the Office of Disability Adjudication and Review ("ODAR") of the Social Security Administration ("SSA")[3] (doc. 23-1 at 5–19, 20–24, 1–4, respectively).  The third exhibit, Mr. Herbst's declaration, states in relevant part: "On September 4, 2013, the [AC] sent, by mail addressed to the plaintiff at 1008 Gospel Rd, Fort Walton Beach, FL 32547, notice of its action on [Plaintiff's] request for review and of the right to commence a civil action within sixty (60) days from the date of receipt (Exhibit 2 [the Notice])." (*id*. at 3; *see also* doc. 23 at 1–2).

Plaintiff contends this action should not be dismissed as time-barred.  She first asserts the Commissioner cannot establish that the date of the AC's Notice, September 4, 2013, is the date the Notice was actually mailed to Plaintiff or, correspondingly, that it is the appropriate date to use for purposes of calculating the sixty-five day filing deadline (i.e., five days for mailing of the AC's Notice, plus sixty days for filing).  In support, Plaintiff states that the ODAR changed the "centralization of [its] mailing operations" in or about 2008 (doc. 25 at 2).  Plaintiff thus contends that by the time the AC's Notice issued in September 2013, the ODAR—which agency Plaintiff describes as "the capstone" of the AC—had delegated "its mailing to a private contractor while implementing centralization of distribution, with the result that the [ODAR] is unable to affirm when an important document was actually mailed" (*id*.).  Plaintiff further contends the ODAR "can point only to a date on the correspondence, not a postmark," and argues that the "date on the [correspondence] may or may not permit the statutorily-allocated minimum, *viz*., 'sixty days,' to initiate federal court appeal of a disability claim" (*id*.).[4]  Therefore, Plaintiff argues, the ODAR "cannot assure this Court of the date of the mailing of the [AC's Notice] that bears the September 2013 date on letterhead [sic]" (*id*. at 4).  In a related argument, with respect to Mr. Herbst's declaration, Plaintiff argues that the declaration is incomplete because it does not "fairly disclose the actual manner of" ODAR's mailing operations, and that the declaration should not be relied upon because Mr. Herbst failed to "frankly admit[] that the agency cannot assure this Court that the

---

[3]  Mr. Herbst's declaration is an unsworn statement which was submitted pursuant to 28 U.S.C. § 1746 as being true under the penalty of perjury.

[4]  Plaintiff contends the ODAR's change in mailing operations commenced at a pilot level in February 2008, that the results of the pilot testing were positive, that the ODAR thus decided to implement the change agency-wide, and that the full implementation was to be completed by the end of 2008 (doc. 25 at 3–4 (quoting http://www.ssa.gov/disability/Documents/Semiannual_Report_FY08.pdf (a website link that is no longer valid))).

contractor mailed—as in, postmarked and surrendered to the USPS—this letter that triggered the running of a statutory time limit of such critical importance here" (*id.*).

Alternatively, Plaintiff asks that if this court determines she filed her complaint out-of-time, that it equitably toll the filing deadline and allow her action to proceed.  In support of this alternative argument, Plaintiff has submitted her own affidavit, in which she explains she was living in a shelter at 1008 Gospel Road in Fort Walton Beach, Florida, on September 4, 2013, and that she resided there "until October 2013" (doc. 25-1 at 1).  She states she did not receive mail on a daily basis when she lived at the shelter, although she does not state how frequently she received mail at that time (*see id.* at 1–2).  Plaintiff also states she did not receive the AC's Notice "within five days" of its date, but she acknowledges she received the Notice while she resided at the shelter, although she does not state the date on which she received it (*id.* at 2–3). Continuing, Plaintiff states that even though she did not receive the Notice on or before September 9 (i.e., five days after its date), she nevertheless mailed her complaint on November 1, 2013, within sixty-five days of September 4, 2013, but she mailed it to the wrong address (*id.* at 2).  As evidence that she originally mailed the complaint on November 1, Plaintiff points to the envelope in which she mailed the complaint, which envelope was scanned by the clerk of this court upon receipt and thus is a part of the court's record (*see* doc. 1 at 5 (the envelope, which is also attached to this Report and Recommendation for ease of reference)).  The envelope bears multiple handwritten and stamped markings, including the handwritten street address to which it was originally mailed, "100 **S**. Palafox St.," which address is <u>not</u> the correct address for this court (*id.*) (emphasis added).  The envelope also shows that the original (incorrect) address was scratched out and over by a thick black line/arrow that points to the correct address for this court, "1 **N**. Palafox St.," which (correct) address is handwritten on the right side of the envelope, just to the right of the thick black line/arrow (*id.*).  Plaintiff contends that the partially visible postmark on the envelope—which appears to read, in full, "01 NC"—is a remnant of the original postmark from the November 1 mailing and that the original postmark actually began with "01 N<u>O</u>" (not "01 N<u>C</u>") and previously read, in full, "01 NOVEMBER 2013," and thus establishes she mailed the original complaint on November 1, 2013 (*see id.*; doc. 25-1 at 2).  Plaintiff further states that the fully visible and fully legible postmark on the same envelope, which reads "NOV 13. 13," is the postmark that was stamped when she re-mailed the complaint to this court on November 13 using the correct address (*id.*).

Plaintiff additionally claims that she used the incorrect address for this court (100 S. Palafox St.) originally because someone at the SSA—whose name she cannot recall—gave her the address

Case 3:13-cv-00586-MCR-EMT    Document 31    Filed 01/05/15    Page 5 of 12

Page 5 of 11

for the Northern District of Florida's bankruptcy court (i.e., 100 N. Palafox St.) instead of its district court[5] (doc. 25-1 at 2). Plaintiff also states that she "found an online site" that listed an address for this court that corresponded with the (incorrect) address provided by the unknown SSA representative (i.e., 100 N. Palafox St.) (*id*.). Plaintiff admits, however, that she "made an additional error," that is, she addressed the original mailing to "U.S. Federal Courts Northern District, 100 **S**. Palafox St.," instead of 100 **N**. Palafox, the address given to her by the unidentified SSA employee[6] (*id*.; *see also* doc. 1 at 5) (emphasis added). She further states, "The mailing I sent to '100 S. Palafox' was returned to me. Immediately I acted to correct the address and to mail the item again." (doc. 25-1 at 2). Plaintiff ultimately obtained the correct address for this court, handwrote the correct address on the right side of the envelope, and re-mailed the complaint to this court on November 13, 2013, but Plaintiff does not explain how she obtained the correct address for this court (*see id*. at 2–3). As noted *supra*, the court received the complaint the following day, November 14, 2013.

III.    LEGAL STANDARDS

A.    Judicial Review of the Denial of Plaintiff's Claims

A claimant seeking judicial review of the Commissioner's final decision must file a civil suit within sixty days "after the Appeals Council's notice of denial of request for review of the administrative law judge's decision or notice of the decision by the Appeals Council is received by the individual . . . ." 20 C.F.R. § 422.210(c); *see also* 42 U.S.C. § 405(g). For purposes of Section 422.210, "the date of receipt of notice of denial of request for review of the presiding officer's decision or notice of the decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c). Thus, the Commissioner's presumption arises upon proof of "the date of [the] notice," without any proof that the notice was in fact mailed on or about that date. *See id*. To rebut the presumption, a claimant must make reasonable showing that she did not receive the notice within five days of its

---

[5]  Plaintiff states she "contacted the SSA at Falls Church, Virginia, which is where the [AC's] denial letter came from," and an unidentified person there gave her the address for the bankruptcy court (doc. 25-1 at 2).

[6]  The court notes that 100 N. Palafox is the site of the Winston E. Arnow Federal Building ("the Arnow Building"), and it is located across the street and approximately one block north of 1 N. Palafox, the current site of the United States Courthouse and office of the district court's clerk of court. The court also notes that: (1) the United States Courthouse and the district court's clerk of court were previously located at the Arnow Building (until 1998); (2) bankruptcy court and some district court proceedings are currently held in the Arnow Building, and thus the site is not for the exclusive use of the bankruptcy court; and (3) although the primary mailing address for the district court is 1 N. Palafox, district court mail sent to the Arnow Building that is more properly directed to 1 N. Palafox is nevertheless accepted at the Arnow Building and subsequently hand-delivered to 1 N. Palafox.

date.  If the claimant successfully rebuts the presumption, the burden shifts to the Secretary to establish that the claimant received actual notice.  *See* McCall v. Bowen, 832 F.2d 862, 864 (5th Cir. 1987).

B.     Equitable Tolling

The doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that "he has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  Equitable tolling "'is an extraordinary remedy which should be extended only sparingly.'"  Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) (quoting Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993)); *see also* Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000) (same); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (per curiam) (equitable tolling is "'appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence'") (citations omitted); Graham–Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000) (the plaintiff's burden of establishing the equitable tolling exception is a high hurdle to clear, as "federal courts sparingly bestow equitable tolling").  With respect to a claimant seeking equitable tolling of section 405(g)'s statute of limitations, the Eleventh Circuit has found that such tolling is available, but noted that "traditional equitable tolling principles require [the] claimant to justify her untimely filing by a showing of extraordinary circumstances . . . such as fraud, misinformation, or deliberate concealment."  Jackson v. Astrue, 506 F.3d 1349, 1353–55 (11th Cir. 2007) (citing Waller v. Comm'r, 168 F. App'x 919 (11th Cir. 2006)).  Thus, a conclusion that equitable tolling is warranted under section 405(g) is reserved for "extraordinary facts."  Jackson, 506 F.3d at 1353–54 (citation omitted).  For example, the extraordinary circumstances standard "may be met 'where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her . . . .'"  *Id.* at 1353 (quoting Waller, 168 F. App'x at 922); *see also* Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151–52 (1982) (per curiam) (stating that a statutory period may be tolled in limited circumstances, i.e., where the delay resulted from conduct engaged in by other parties without any apparent negligence by the plaintiff, and noting that in such situations equity would not be served by barring the cause of action); Bowen v. City of New York, 476 U.S. 467, 481–82 (1986) (noting that tolling may be appropriate in "the rare case such as this" where the government's secretive conduct prevented the plaintiffs from learning of their rights).  *Cf.* Justice, 6 F.3d at 1479 (noting that "the interests of justice side with the defendant when the plaintiff

does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running") (citations omitted). Finally, whether the facts of a particular case demonstrate extraordinary circumstances is a fact-specific determination. Jackson, 506 F.3d at 1354–55 (citing Cabello v. Fernandez-Larios, 402 F.3d 1148, 1154 (11th Cir. 2005)).

IV.    DISCUSSION

      A.    Presumption of Receipt of Notice

Here, the parties agree—and the record establishes—that the AC's Notice is dated September 4, 2013. Thus, according to the terms of 20 C.F.R. § 422.210(c), Plaintiff is presumed to have received the notice five days later, on September 9, 2013. To rebut this presumption, Plaintiff must make a "reasonable showing" to the contrary. Id. Plaintiff has made no such showing.

Plaintiff first argues that the 2008 changes to the ODAR's mailing operations have resulted in the Commissioner's inability to establish the date on which the AC's notices are actually mailed, including the one mailed to Plaintiff. But, as noted supra, the Commissioner is not required to prove the date on which an AC's notice is actually mailed for the presumption to apply. Thus, the alleged change in the ODAR's mailing operations has no bearing on the presumed date of Plaintiff's receipt of the AC's Notice. Likewise, Mr. Herbst's alleged inability to pinpoint the date on which Plaintiff's Notice was actually mailed to her does not alter the presumed date on which she received the Notice. Additionally, to the extent Plaintiff generally contends the change in mailing operations constitutes a "reasonable showing" that she did not receive the Notice on or before September 9, 2013, the contention is unavailing. Even if the change occurred as Plaintiff alleges, the change applies equally to all claimants. Thus, to find that a reasonable showing has been made here, based merely on a change in ODAR's mailing operations, would be tantamount to finding that every claimant who received a notice from the AC after 2008 could make the same showing, because—according to Plaintiff—the change was implemented agency-wide and thus affects all claimants to whom correspondence was mailed from 2008 forward. Furthermore, no changes to the relevant provisions of Section 422.210 have been made since the alleged change in ODAR's mailing operations; thus, the terms of regulation continue to control the issue.

Second, to the extent Plaintiff contends she has made a reasonable showing that she did not receive the Notice based on her living circumstances at the time the Notice issued, the contention is unavailing. Initially, "a long line of cases indicates that denying the timely receipt of the notice is insufficient, standing alone, to extend the period for filing a lawsuit." Hardin v. Astrue, No. 5:09cv94/RH/EMT (doc. 25, Order of Dismissal (N.D. Fla. Nov. 5, 2010)) (citing Cook v. Comm'r

of Soc. Sec., 480 F.3d 432, 436–37 (6th Cir. 2007); Garcia v. Comm'r of Soc. Sec., 53 F. App'x 192, 194–95 (3d Cir. 2002); Velez v. Apfel, 229 F.3d 1136, 2000 WL 1506193, at *1–2 (2d Cir. 2000) (table); Kinash v. Callahan, 129 F.3d 736, 738 (5th Cir. 1997); Rivera v. Sec'y of Health & Human Servs., 39 F.3d 1188, 1994 WL 594739, at *9 (9th Cir. 1994) (table); Piscopo v. Sec'y of Health & Human Servs., 27 F.3d 554 , 1994 WL 283919, at *4 (1st Cir. 1994) (table); McCall v. Bowen, 832 F.2d 862, 864 (5th Cir. 1987); Skyles v. Astrue, No. 4:08CV1933 AGF, 2009 WL 2382357, at *3–4 (E.D. Mo. July 30, 2009); Velazquez v. Massanari, No. 4:00CV3320, 2002 WL 246760, at *1 (D. Neb. Feb. 21, 2002); Marte v. Apfel, No. 96 Civ. 9024(LAP), 1998 WL 292358, at *2–3 (S.D.N.Y. June 3, 1998); Roberts v. Shalala, 848 F. Supp. 1008, 1015–17 (M.D. Ga. 1994); Leslie v. Bowen, 695 F. Supp. 504, 506–07 (D. Kan. 1988); Skelton v. Bowen, Civ. No. 87-5010, 1988 WL 34287, at *1–2 (D.N.J. Apr. 5, 1988); Rouse v. Harris, 482 F. Supp. 766, 769 (D.N.J. 1980); Pence v. Shalala, No. 94-CV-6154, 1996 WL 805070, at *6 (D.N.J. Feb. 15, 1996)).[7]  Thus, consistent with the findings of numerous other courts, the undersigned finds that Plaintiff's sworn word that she did not receive the AC's Notice within five days of its date is insufficient, by itself, to rebut the statutory presumption.  Likewise, her contention that she did not receive mail on a daily basis during the relevant time frame is equally insufficient.  See Piscopo, 1994 WL 283919, at *4 (that the plaintiff did not retrieve the contents of her post office box daily does not refute the presumption that the Secretary's notice was received five days after it was mailed).

Moreover, as noted supra, Plaintiff failed to state or explain in her affidavit: (1) how often she received mail when she resided at the shelter; (2) the actual date on which she received the AC's Notice; or (3) the date on which she last resided at the shelter (which date would establish the latest

[7]  In Hardin, the district court acknowledged that "there are cases that could be cited on the other side of the issue" but noted that such cases "generally involve additional circumstances."  Hardin, No. 5:09cv94/RH/EMT (doc. 25, Order of Dismissal (N.D. Fla. Nov. 5, 2010)) (citing, as an example, Lee v. Barnhart, No. CIV.A.02-10114-RGS, 2002 WL 1034711, at *1 (D. Mass. May 22, 2002) (presumption rebutted where plaintiff established she had moved and the postal forwarding order had expired; she submitted affidavits from her attorney and the attorney's secretary attesting to the date the notice was actually received in the attorney's office and to the office's mail intake protocol; and the court took judicial notice of the fact that the contamination of several key postal sorting facilities with anthrax seriously impeded the expeditious delivery of mail originating in the Washington, D.C., area during the fall of 2001—but nevertheless noting bewilderment over the fact that complaint was not filed "until the midnight hour"; that the "entire dispute could have been avoided by the simple expedient of filing six days earlier"; and that the issue before it "could [have been] decided unobjectionably either way").  See also, e.g., Rhodes v. Commissioner of Social Sec., No. 09-14204, 2010 WL 3168247, at *3 (E.D. Mich. Aug. 10, 2010) (equitable tolling warranted where claimant substantiated her claim that she never received notice from the AC with multiple letters from several governmental entities (including the United States Postal Service, United States Postal Inspection Service, and State of Illinois Attorney General's office), which ostensibly indicated that her mail had been improperly delivered on a number of occasions in the past; she also provided a letter, as well as e-mail correspondence from an SSA employee, in which the employee acknowledged that he miscalculated the filing deadline and unintentionally misinformed claimant, who was then proceeding pro se, of the filing deadline; she submitted proof that her address had changed; and she filed her complaint only three days late, which filing date was the same date provided (erroneously) by the SSA employee).

Case 3:13-cv-00586-MCR-EMT   Document 31   Filed 01/05/15   Page 9 of 12

Page 9 of 11

date on which she could have received the Notice). Plaintiff's failure to include such important information in her affidavit is, at worst, an effort to mislead the court by omitting facts that—though relevant—are harmful to her position. At best, the omissions weigh against a finding that she has made a reasonable showing that she did not receive the AC's notice in a timely fashion.

Finally, because Plaintiff has not successfully rebutted the presumption, the burden has not shifted to the Commissioner to establish that Plaintiff received actual notice. Nevertheless, it is worthwhile noting that the record in this case establishes that: (1) the AC's Notice was mailed to Plaintiff at her correct address (that is, 1008 Gospel Road in Fort Walton Beach, Florida, the address of the shelter where she was residing); (2) Plaintiff actually received the AC's Notice while residing at this address; and (3) Plaintiff received the Notice no later than the end of October 2013, but possibly much earlier. Thus, Plaintiff could have commenced a federal civil action on or before November 8, 2013. Indeed, Plaintiff admits that she originally mailed her complaint on November 1, 2013, one week before the filing deadline. The complaint would therefore have reached this court by the filing deadline—barring an unusual or extraordinarily rare circumstance that disrupted the mail or interfered with its delivery—had Plaintiff used the correct mailing address for this court. Plaintiff used the wrong address, though, and it is her error, not her alleged late receipt of the AC's Notice, that resulted in the late filing of the complaint. The court thus considers whether this error, or any other circumstance, entitles Plaintiff to equitable tolling.

B.      Equitable Tolling

Plaintiff has failed to demonstrate the existence of extraordinary facts to warrant equitable tolling. Initially, nothing evidences that her late filing was the result of fraud or deliberate concealment by the Commissioner. Instead, the record shows that Plaintiff was informed in clear language of her right to appeal to the district court and the time frame within which to do so. Although Plaintiff alleges an SSA representative gave her the incorrect mailing address for this court, and thus she originally mailed her complaint to the wrong address, her allegations do not entitle to her to equitable tolling. First, as with her attempt to establish that she did not receive the AC's Notice within the presumptive five-day period, Plaintiff has omitted pertinent facts from her affidavit with respect to the issue of equitable tolling. For example, Plaintiff does not identify by name the SSA representative who gave her the incorrect address for this court, she does not state the date on which she spoke to the representative, she does not identify or otherwise describe the website where she allegedly found an address for this court which was consistent with the incorrect address given to her by the unnamed SSA representative, she does not state the date on which the

original mailing was returned to her or whether it was returned to her prior to the filing deadline, she does not explain why she evidently failed to seek from the AC an extension of time to file suit,[8] and she does not explain how she ultimately obtained the correct address for this court and why she could not have discovered the court's correct address (in the same manner or some other manner) earlier. Second, even if an SSA representative gave Plaintiff the wrong address—or some other circumstance prevented Plaintiff from timely filing her complaint—there is no evidence that she sought from the AC an extension of time to file suit, even though the AC's Notice advised Plaintiff she could request such an extension and provided the address she should use to do so (doc. 23-1 at 3). *See, e.g.*, Smith v. Barnhart, 338 F. Supp. 2d 761, 765 (S.D. Tex. 2004) (equitable tolling unwarranted where claimant blamed the social security office for her late filing, claiming that they gave her the wrong form, where claimant had been advised she had sixty days to file a federal lawsuit and presented no evidence that she sought and received from the AC an extension of time to file suit). Third, and perhaps most important, Plaintiff clearly could have determined the correct address for this court with the exercise of even minimal diligence.

What is more, even if Plaintiff was "misinformed" of this court's address as she alleges, she admits she failed to use the address that was provided to her (100 **North** Palafox St.). Had she done so, the complaint would have been delivered initially to the Arnow Federal Building and then hand-delivered to this court, and not returned—unfiled—to Plaintiff (*see* footnote 6, *supra*). Regardless, Plaintiff's failure to timely file was caused by garden-variety neglect, not due to some circumstance that was both beyond her control or unavoidable even with due diligence.

Finally, Plaintiff's pro se status at the time she initiated this action, by itself or coupled with the facts alleged by Plaintiff, do not constitute extraordinary circumstances. *See, e.g.*, Jackson, 506 F.3d at 1356 (court declined to apply equitable tolling where—among other factors—"the AC unambiguously advised [the pro se claimant] to file her complaint in the United States District Court for the judicial district in which she lives within sixty days from the date of her receipt of the letter" and that the AC would assume she received the letter five days after its date (as the AC did here (*see* doc. 23-1 at 20–24))); Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 969–70 (11th Cir. 1997) (refusing to equitably toll the time to appeal a decision of the Railroad Retirement Board for a pro se litigant);

---

[8]   *See* 20 C.F.R. § 416.1482 (a party to a decision of the AC "may request that the time for filing an action in a Federal district court be extended," and the time period will be extended if the party shows "good cause for missing the deadline") (citing 20 C.F.R. § 416.1411 (describing what constitutes "good cause")).

Piscopo, 1994 WL 283919, at *3–4 (same, with respect to a decision of the Secretary of Health and Human Services).

In short, the circumstances of this case do not entitle Plaintiff to the extraordinary relief she seeks. Congress intended section 405(g) to "compress the time for judicial review," Matlock v. Sullivan, 908 F.2d 492, 494 (9th Cir. 1990) (citation omitted), and Plaintiff has pointed to no "equities in favor of tolling the limitations period [that] are 'so great that deference to the agency's judgment is inappropriate.'" Bowen v. City of New York, 476 U.S. at 480 (quoting Mathews v. Eldridge, 424 U.S. 319, 330 (1976)); see also, e.g., Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 661 (11th Cir. 1993) (the burden is on the plaintiff to show that equitable tolling is warranted). As the Fifth Circuit put it, "equity is not intended for those who sleep on their rights," as Plaintiff has done here. Covey v. Arkansas River Co., 865 F.2d 660, 662 (5th Cir. 1989); see also Baldwin County, 466 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

V.     CONCLUSION

Plaintiff has not rebutted the presumption that she received the AC's Notice on September 9, 2013. Thus, her complaint, filed November 14, 2013, was untimely filed. Additionally, the court concludes that the doctrine of equitable tolling should not be applied in this case. Accordingly, the Commissioner is entitled to summary judgment on the ground that this action is barred by the statute of limitations.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1.     That the Commissioner's Amended Motion to Dismiss (doc. 23), considered by the court as a motion for summary judgment, be **GRANTED**.

2.     That judgment be entered accordingly and the clerk be directed to close this file.

At Pensacola, Florida, this 5th day of January 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

U.S. POSTAGE PAID
FORT WALTON BEA.FL
NOV 13 '13
AMOUNT
$0.46
00013570-03

Bank Swallow

32502

1000

01 NC

32547 0124

Darlene M. Gay-Allen
1008 Gospel Rd.
Fort Walton Beach, FL 32547
1 N. Palafox St

U.S. Federal Courts Northern District
1 N. Palafox St
Pensacola, FL 32502